# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| JENNIFER ROTH, | Civil No. 15-3270 (JRT/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| LIFE TIME FITNESS, INC., LTF CLUB OPERATIONS COMPANY, INC., LTF CLUB MANAGEMENT COMPANY, LLC, and LTF YOGA COMPANY, LLC, | |
| Defendants. | |

Brant Penney, **REINHARDT WENDORF & BLANCHFIELD**, 332 Minnesota Street, Suite E-1250, St. Paul, MN  55101, and Daniel R. Karon, **KARON LLC**, 700 West St.  Clair Avenue, Suite 200, Cleveland, OH  44113, for plaintiff.

Brian T. Benkstein, **JACKSON LEWIS P.C.**, 225 South Sixth Street, Suite 3850, Minneapolis, MN  55402, and L. Dale Owens, **Jackson Lewis LLP**, 1155 Peachtree Street Northeast, Suite 1000, Atlanta, GA  30309,  for defendants.

Plaintiff Jennifer Roth was a group fitness instructor at one of defendants' Life Time Fitness's health clubs.  She alleges in this action that Life Time was unjustly enriched when it did not pay her but required her to attend certain events, curate a music playlist for her classes, and arrive before and stay after her classes.  Roth seeks to represent a class of similarly situated group fitness instructors.

Defendants' have moved to dismiss the action.  The Court finds that Roth has failed to plead facts sufficient to state a claim because her complaint is vague as to her

employment relationship with Life Time.  The Court will therefore grant defendants' motion and dismiss Roth's complaint without prejudice.

## BACKGROUND

Plaintiff Jennifer Roth is a resident of Ohio.  (Compl. ¶ 3, Aug. 13, 2015, Docket No. 1.)  Defendants are Life Time Fitness, Inc. ("Life Time"), as well as three of Life Time's subsidiaries:  LTF Club Operations Co., Inc.; LTF Club Management Co., LLC; and LTF Yoga Co., LLC.  Life Time and LTF Club Operations are residents of Minnesota, according to the complaint.  (*Id.* ¶¶ 4-5.)  LTF Club Management is "registered" in Arizona.  (*Id.* ¶ 6.)  The complaint does not contain facts related to LTF Yoga's residency.  (*See id.* ¶ 7.)  For the purposes of this opinion, the Court refers to all Defendants as "Life Time."

From 2009 to 2013, Roth worked as a group fitness instructor at a Life Time location in Beachwood, Ohio, where she taught spinning classes.  (*Id.* ¶¶ 3, 12.)  Roth's complaint states that she "performed labor . . . in exchange for hourly wages."  (*Id.* ¶ 13.) That is all Roth's complaint states with regard to Roth's employment relationship with Life Time.

Roth alleges three improprieties against Life Time.  First, Roth states that Life Time did not pay her for time she spent in her classroom before and after class.  Life Time required Roth to "teach[] 60 minutes of class time" and also to "perform work that preceded and followed each of her spinning classes."  (*Id.* ¶ 14.)  Life Time required Roth

to replace, arrange, and clean classroom equipment before each class.  (*Id.* ¶ 18.)  Life

Time's "Group Fitness Instructor Manual" states:

> **Every Class, Every Time** – You are expected to be in the studio, ready to
> teach, 15 minutes before your class with music playing.  A 15-minute
> transition time between classes exists for you to connect with the members
> and set the stage and environment for your class.

(*Id.* ¶ 15.)  Life Time also required Roth to clean her classroom after each class, a process

that "included wiping down any equipment, replacing props and mats, and gathering up

sweaty towels and taking them to the laundry, despite the presence of cleaning personnel

on staff."  (*Id.* ¶ 18.)  The manual instructs group fitness instructors to participate in

cleanup after their class:

> The studio is your home and every day is "Open House".  You are
> responsible for leaving the studio in a condition of which you can be proud.
> All Life Time Fitness Team Members participate in the upkeep and
> presentation of our workplace; this includes the Group Fitness Team.  Your
> department head will show you a cleaning checklist that may include re-
> stacking mats and weights, gathering towels, etc; *this is your*
> *"contribution" for each class that you teach and is a requirement of your*
> *position."*

(*Id.* ¶ 17.)  Roth states she was not paid for any time spent preparing for or cleaning up

after her classes.  (*Id.*)

Second, Roth states that Life Time did not pay her for time she spent curating

music playlists for her spin classes, and did not reimburse her for associated music-

download costs.  (*Id.* ¶ 16.)  The manual states, "Your music is your 'auditory signature'.

You are expected to keep it and change it often."  (*Id.*)

Third, Roth states that she was required to "participat[e] in" or "staff[] . . . various

events taking place at [Life Time's] fitness centers, such as Commitment Day,

Father/Daughter Dance, Halloween Party, and similar fitness center events," all without receiving pay. (*Id.* ¶ 18.)

All of Life Time's fitness instructors were paid – and not paid – under the same arrangement and were required to perform similar tasks for their classes. (*Id.* ¶¶ 11, 14.)

Roth filed her complaint in this Court on August 13, 2015. Roth seeks to be a class representative and proposes twenty-three alternative classes based on two different scenarios: either (a) one multistate class covering all Life Time fitness instructors, or (b) twenty-two separate classes covering group fitness instructors in each of the twenty-two states where Life Time operates. (*Id.* ¶ 33.) Similarly, Roth's complaint alleges 23 counts against Life Time: Count 1 is an unjust enrichment claim under Minnesota law for Life Time's conduct as it relates to all group fitness instructors in all states. (*Id.* ¶¶ 40-43.) Counts 2 through 23 are unjust enrichment claims brought under each respective state's law pertaining to that respective state's class. (*Id.* ¶¶ 44-140.) Roth requests monetary relief, as well as costs and attorneys' fees. (*Id.* at 20.)

Life Time filed the motion to dismiss now at issue on November 13, 2015.

## ANALYSIS

### I.     STANDARD OF REVIEW

Life Time brings this motion to dismiss under Rule 12(b)(1) and 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction to decide a case. In deciding a motion under Rule 12(b)(1) the Court must first "distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United*

*States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  Life Time does not challenge the "factual truthfulness" of Roth's claims, but rather the sufficiency of her pleadings, and therefore Life Time's jurisdictional challenge is facial.  *Sierra Club v. Clinton*, 689 F. Supp. 2d 1147, 1154 (D. Minn. 2010).  Because Life Time's challenge is facial, the Court applies the same standard of review as the Court applies to a motion brought under Rule 12(b)(6).  *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).

In reviewing a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.

## II.    UNJUST ENRICHMENT

Life Time argues that Roth has failed to plead facts sufficient to state a claim for unjust enrichment.  "To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay."  *Caldas v. Affordable Granite &*

*Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)).  Where a plaintiff is party to a valid contract, a court cannot grant relief under unjust enrichment for conduct governed by the contract.  *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 35 (stating that unjust enrichment may arise when one party to a contract demands from another party performance that is outside the scope of the parties' contract).

Roth's unjust enrichment claims are unusual because they are brought without the typically attendant breach of contract claims.  Roth is of course the master of her complaint, and her decision to not bring a breach of contract claim is immaterial to the viability of her unjust enrichment claims; those claims must live or die on their own.  But Roth's choice does make the evaluation of her claims more complex because almost all of the relevant precedential cases were decided in the typical context in which a plaintiff pleads unjust enrichment as an alternative to breach of contract.  Claims for breach of contract and unjust enrichment are mutually exclusive:  just as a party cannot obtain relief under a breach of contract claim if the at-issue conduct is not governed by the contract, a party seeking relief for conduct that is governed by a contract cannot succeed with an unjust enrichment claim.  *U.S. Fire Ins.*, 307 N.W.2d at 497 (stating that an unjust enrichment claim fails if a breach of contract claim is successful); *cf.* Restatement § 35 (stating there may be unjust enrichment where a party demands performance outside the scope of the contract).

Thus, for Roth's unjust enrichment claim to survive Life Time's motion to dismiss, Roth needs to have alleged that there was no contract between her and Life Time **or** that there was a contract and her at-issue performance was outside of that contract's scope.  But Roth has done neither here, and for that reason, she has failed to state a claim upon which relief can be granted.  Roth's only allegation regarding her relationship to Life Time is that she "exchanged" her labor for "hourly wages."  (Compl. ¶ 13.)  The Court, however, cannot determine from this lone factual assertion whether or not a contract existed, or whether Roth is arguing that a contract existed.  Even if this allegation were sufficient to suggest the existence of a contractual relationship, Roth does not plead any facts that would make it possible for the Court to determine whether she alleges that the conduct at issue – Roth's event attendance, playlist curation, classroom preparation, and after-class cleanup – fell outside or within the scope of that contract.  Without more, the Court must find that Roth has failed to state a claim.

At the hearing, counsel for Life Time asserted that it paid its group fitness instructors on a piece rate basis, and the parties discussed – for the first time – the application of various wage and hour regulations, such as minimum wage laws, to piece-rate pay arrangements.  The Court references the parties' discussion of this matter only to note that nothing about piece rate employment can be found in the complaint, and therefore the discussion at the hearing does not and cannot alter the Court's finding that Roth failed to state a claim.

The Court also notes that the parties thoroughly briefed whether Roth's unjust enrichment claims must be dismissed if Roth could have also or alternatively brought a

colorable legal claim, whether it be under contract law or some statute.  The Court need not decide that issue today because Roth has not pleaded enough facts to support her unjust enrichment claim.  The Court notes, however, that it is at best unclear whether the Minnesota Supreme Court has addressed this question.  The Minnesota Supreme Court has confronted unjust enrichment claims in at least three modern cases, and while dicta in each case can be found to support either party's argument, the holdings in those cases are not easily extended to Roth and Life Time's situation.  *See Caldas*, 820 N.W.2d at 838-39 (denying a plaintiff's unjust enrichment claim where the plaintiff also failed to establish status as a third-party beneficiary); *ServiceMaster*, 544 N.W.2d at 306 (reversing an unjust enrichment award because the defendant was not even "enrich[ed]," let alone unjustly enriched – the defendant "paid dollar-for-dollar for what it got"); *U.S. Fire Ins.*, 307 N.W.2d at 497 (finding that because plaintiffs should be awarded judgment on the pleadings for their breach of contract claim, they necessarily could not also receive relief for their unjust enrichment claim).  Furthermore, the Court notes that the Restatement finds that the "conclusion" that an unjust enrichment claim "may be dismissed [if] the plaintiff has an adequate remedy at law . . . is simply wrong." Restatement § 35, cmt. (discussing in great depth the origin of what the Restatement sees as a misnomer).

Finally, the Court highlights that it is dismissing Roth's claims without prejudice because there is no indication that it would be impossible for Roth to cure her pleadings by alleging other facts.  *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1053 (9th Cir. 2001); *see also Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012)

(citing *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011) ("When a district court dismisses an action for failure to state a claim, it may do so with or without prejudice.").

## III.   STANDING

Life Time also argues that Roth lacks standing to bring many of her claims under the laws of the various states for which she has no personal connection.  Normally the Court would address Life Time's standing argument first, before the merits, because "standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit."  *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 621 (8th Cir. 2012) (quoting *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007)).  But in the context of a class action, two U.S. Supreme Court decisions – *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) – "make clear that there are situations in which a court may defer" the standing question "to later in the case."  *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014).  Although neither *Amchem* nor *Ortiz* created a blanket exception permitting delay in adjudication of standing generally in the class action context, the two cases stand for the proposition that standing questions may be postponed when class certification is "logically antecedent" to standing.  *In re Anthem, Inc. Data Breach Litig.*, No. 15-2617, 2016 WL 589760, at *5 (N.D. Cal. Feb. 14, 2016) (quoting *Ortiz*, 527 U.S. at 831).

Courts disagree on the scope and application of the rule in *Amgen* and *Ortiz*. *Compare, e.g.*, *In re Target Corp. Data Sec. Breach Litig*, 66 F. Supp. 3d 1154, 1159 (D. Minn. 2014) (finding that the court may wait to address standing questions until after class certification), *with Insulate SB, Inc. v. Advanced Finishing Syss., Inc.*, No. 13-2664, 2014 WL 943224, at *10-12 (D. Minn. Mar. 11, 2014) (finding that it may not). And the Eighth Circuit has not yet weighed in on the issue. *See Insulate SB*, No. 13-2664, 2014 WL 943224, at *11 n. 6 (finding that as of March 2014 the Eighth Circuit had not addressed the split). Nonetheless, a number of recent and thoroughly reasoned decisions have come down in favor of permitting courts the discretion to wait to address standing in class actions. *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1068-70 (N.D. Cal. 2015) (describing the split in authority in detail, then finding that federal courts possess discretion to delay adjudication of standing questions when class certification is logically antecedent to the standing question).

Here, the parties have not directly briefed this issue – whether the Court must or should address standing prior to the unjust enrichment issue. But the Court must either decide the standing question first, or not decide it first – there is no halfway. So for the limited purposes of this motion to dismiss, the Court will defer on the standing question. Standing was only an alternative argument in the parties' briefing, and because of the jurisdictional peculiarities of the class action lawsuit, as well as principles of judicial modesty, judicial economy, and efficiency, the Court declines to address Life Time's standing argument today.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion to Dismiss [Docket No. 23] is **GRANTED.**  Plaintiff's complaint is **DISMISSED without prejudice.**

**LET JUDGEMENT BE ENTERED ACCORDINGLY.**

DATED: July 14, 2016
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court